IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>v.<br><br>RAUL MORENO-GARCIA,<br><br>        Defendant. | Case No. 2:20-CR-00093 DS<br><br>**MEMORDANDUM DECISION AND ORDER DENYING MOTION FOR REVIEW OF DETENTION AND REQUEST FOR HEARING**<br><br>District Judge David Sam<br><br>Magistrate Judge Cecilia M. Romero |

  Before the court is Defendant Raul Moreno-Garcia's (Defendant or Mr. Moreno-Garcia) "Motion to Review Detention and Request for Hearing" relating to the COVID-19 virus (ECF 22) (Motion). While Mr. Moreno-Garcia has requested oral argument, the court finds that oral argument would not further aid the court in making its determination. As discussed below, the COVID-19 emergency bears significantly as to whether the defendant should be released but, in the end, the court concludes detention remains warranted and therefore DENIES the Motion.

## I.  BACKGROUND

  On February 26, 2020, Mr. Moreno-Garcia was indicted with possession of a firearm by a restricted person unlawfully in the United States (ECF 1). He was ordered detained at his March 13, 2020, Initial Appearance (ECF 8). At the March 13 hearing, Mr. Moreno-Garcia briefly addressed the concern of a recent amputated toe and an undocumented kidney issue. Notwithstanding, the court found that while a difficult case, the government met its burden given the risk of nonappearance, nature of the charges, immigration detainer, and consequences of the charges. The court therefore found that Mr. Moreno-Garcia was an unmanageable danger to the community and flight risk. On April 22, 2020 Mr. Moreno-

Garcia filed the present Motion (ECF 22). The United States opposes the Motion (ECF 25). Mr. Moreno-Garcia also filed a reply to the United States opposition (ECF 26). The matter is now fully briefed.

## II.     ANALYSIS

### A. Standard of Review

Mr. Moreno-Garcia files the present Motion under 18 U.S.C. § 3142(i)(4), which provides that

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reasons.

18 U.S.C. § 3142(i)(4). The compelling reason provided in the present case is the COVID-19 virus and the concerns with the virus spreading while in detention. Mr. Moreno-Garcia also argues that he has a heightened health risk due to a recently amputated toe, broken big toe, and anxiety disorder (ECF 22 at 2). This is not the typical situation this subsection has been used, but the public health situation the world currently finds itself in is also unprecedented. This court has issued multiple General Orders to address the situation, including, except when necessary, limiting access to the courthouse and vacating in-person hearings and trials. *See* General Orders 20-009 and 20-010. Given the unprecedented situation, it seems appropriate to consider the COVID-19 pandemic under subsection 3142(i)(4).

There is not clear guidance on whether section 3142(i)(4) should be considered as a stand-alone analysis or must be considered in conjunction with the typical detention factors listed under section 3142(g). *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020) (explaining the various standards courts have used to consider COVID-19 motions for release). Notwithstanding the court addresses the 3142(g) factors below.

**B. The court reopens its detention determination under Section 3142(f)**

The court conducted the previous detention hearings in this matter under the Bail Reform Act. *See* 18 U.S.C. § 3142 (2006). Using that standard, Mr. Moreno-Garcia was ordered detained pending trial. Though it was not mentioned in Defendant's brief, the court construes the Motion as a motion to reopen the detention hearing based upon new and material information under Section 3142(f)(2). Section 3142(f)(2) explains that a detention "hearing may be reopened ... at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

Mr. Moreno-Garcia's main argument in favor of temporary release is the COVID-19 pandemic and his specific health concerns relative to that virus. At the time of his detention hearing, the record in this matter does indicate some virus concerns were argued by his attorney—specifically a concern with his amputated toe and a kidney issue which did not have any supporting documentation. However, at that time the serious impact of the virus was just beginning to be understood. Since that time, COVID-19 has spread to the United States, and it has reached pandemic levels. During the previous hearing, it is therefore conceivable that Mr. Moreno-Garcia was not aware that COVID-19 would become a pandemic. Though by a slim margin, the court therefore concludes that Mr. Moreno-Garcia has provided new information that was not known to him at the time of his previous detention hearing and that this information has a material bearing on the issue of whether conditions of release are appropriate. *See* 18 U.S.C. § 3142(g)(3)(A) (stating that two of the factors to be considered under the Bail Reform Act is the physical and mental condition of the defendant).

### C. Consideration of the material information

Next, the court must consider what impact this new information has on Mr. Moreno-Garcia's detention. Addressing section 3142(i)(4), the court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. The court also recognizes the sincere concern undoubtedly felt by Mr. Moreno-Garcia, specifically the anxiety he is experiencing which is not unfamiliar to many. But, even weighing the sincere concern of Mr. Moreno-Garcia, a defendant should not be entitled to temporary release under § 3142(i)(4) based solely on generalized COVID-19 fears and speculation. *Clark*, 2002 WL 1446895, at *2. Rather, based on the persuasive authority in the *Clark* case, the court must make an individual determination as to whether COVID-19 presents sufficient concerns for release. In making that determination, it is appropriate to evaluate: (1) the original grounds for the defendant's pretrial detention based on a consideration of the typical detention factors listed in section 3142(g); (2) the "specificity of the defendant's stated COVID-19 concerns"; (3) if the proposed release will mitigate the COVID-19 risks to the defendants; and (4) if the release will mitigate COVID-19 risks to others. *Id*. at *3.

### 1. The 3142(g) factors do not weigh in favor of release

Under the Bail Reform Act of 1984, if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." *See* 18 U.S.C. § 3142(e). In making this determination, the court is guided by the factors set forth in 18 U.S.C. § 3142(g), including (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person" (including, among other things,

"character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" as well as a consideration of whether the defendant was on probation, parole, or other form of supervision at the time of the alleged instant offense), and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

As to the nature and circumstances of the offense charged, Mr. Moreno-Garcia was found in possession of a loaded handgun in his waistband and a set of brass knuckles. These are dangerous weapons and serious charges that favor detention when looking at the danger to the community. As to the weight of the evidence, the handgun was found on his person, and Mr. Moreno-Garcia apparently admitted to not being lawfully present in the United States. The weight of the evidence is therefore strong. As to his prior history, while he has a limited criminal history, he is here unlawfully, and while fleeing to Mexico is not of concern to the court given that Mr. Moreno-Garcia indicates he has few ties to Mexico, absconding within the United States is of concern. Looking at the totality of these concerns, the court finds there is no condition or combination of conditions to manage the risk of flight or danger to the community.

**2. Specificity of Mr. Moreno-Garcia's concerns**

While Mr. Moreno-Garcia has articulated specific concerns in regard to his health—a recently amputated toe, broken big toe, and an anxiety disorder—this court has previously considered the amputated toe and ruled that notwithstanding, there was no set of conditions to manage the risk of flight and danger to the community. No new information has been presented on the amputated toe to change the court's prior determination. With respect to the broken toe and anxiety, as the United States argues, no information was presented to show how the virus

may put him at greater risk. Mr. Moreno-Garcia has not alleged any complications such as infection other than generalized concerns that many people that are incarcerated face. Mr. Moreno-Garcia presents information from experts in the field discussing the danger of outbreaks in the jail, but even given those concerns, in this matter the danger to the community and flight risk are not outweighed.

### 3. Mitigating COVID-19 risks

Mr. Moreno-Garcia is charged with not being in the country legally. An immigration detainer has been placed on him. A release in this matter will not likely result in an ultimate release into the community due to his immigration status, and as such his concerns of contracting COVID-19 will not be mitigated with this court's release. As the court understands it, he would likely be turned over to ICE, thereby trading one facility for another. The court has no information on the mitigating efforts to stop the virus at any ICE facilities. Mr. Moreno-Garcia suggests if the United States were to intervene with ICE, perhaps he would not be turned over to ICE (ECF 26 at 5). Given the United States' opposition, that argument is too speculative for the court.

Mr. Moreno-Garcia argues that the jail lacks the "resources necessary to engage in screening and testing," the close quarters and low sanitary conditions make it especially dangerous (ECF 22 at 5). While this may be true, the United States indicates as of April 22, there were no reported cases of COVID-19 at the Weber County Jail (ECF 25 at 11). Mr. Moreno-Garcia confirms that in his April 28 reply brief (ECF 26 at 5). The United States also addresses the intake precautions the jail is taking, including Level 2 housing for anyone that presents symptoms while incarcerated. While perhaps not perfect, it appears the jail is taking

some measures to protect its population.  Therefore, the court cannot find that release would mitigate COVID-19 concerns for Mr. Moreno-Garcia or others.

Taking all of this into consideration, the court DENIES Mr. Moreno-Garcia's Motion.

DATED this 27 April 2020.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah